THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 2:06-cr-00025-MR

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| SAMUEL EDDIE PHEASANT, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's "Motion for Reduced Sentence under 18 U.S.C. § 3582(c)(1)(A)(i)" [Doc. 80].

**I.   BACKGROUND**

On the morning of July 1, 2006, the Defendant Samuel Eddie Pheasant got into a physical altercation with his cousin, Dennis Lloyd Teesateskie, while at a residence located at Bunches Creek Road on the Cherokee Indian Reservation. [Doc. 67: PSR at ¶ 8]. During this altercation, Teesateskie reportedly struck the Defendant in the mouth. [Id.]. After the altercation, the Defendant and Teesateskie traveled together to the residence of Velma Bradley in the Big Cove community. [Id.]. The Defendant left to retrieve a .22 caliber Marlin bolt action rifle from his residence. [Id.]. He then returned to Velma Bradley's residence, where he saw Teesateskie sitting on the back

of a truck parked in the driveway. [Id.]. The Defendant removed a bullet from his pocket and loaded his rifle. [Id.]. While the Defendant was at the end of the driveway, Teesateskie began running toward him. [Id.]. The Defendant shouldered the rifle and fired one round, hitting Teesateskie in the left abdomen area. [Id.]. Teesateskie took the rifle from the Defendant and struck him three times across the head. [Id. at ¶ 10]. The Defendant left the scene and drove to the Cherokee Indian Police Department, where he admitted to shooting Teesateskie. [Id.]. The Defendant also provided a statement to the FBI, wherein he admitted to shooting Teesateskie. [Id.]. The Defendant further stated that he had "been drunk all week." [Id.]. When asked why he had shot his cousin, the Defendant replied, "He pissed me off, man." [Id.]. Teesateski died later that day at the hospital. [Id. at ¶ 13].

The Defendant was charged in a Bill of Indictment with first degree murder, in violation of 18 U.S.C. §§ 1111 & 1153 (Count One), and with using and carrying a firearm during and in relation to a crime of violence which resulted in the death of another, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 924(j)(1) (Count Two). The statutory term of imprisonment for Count One was death or life imprisonment, and the statutory term of imprisonment

for Count Two was a mandatory consecutive term of not less than ten years, death or life. 18 U.S.C. §§924(c)(1)(A)(iii) and 924(j)(1).

The Defendant was found guilty of both counts by a jury on December 5, 2006. [Doc. 25]. On October 26, 2007, this Court[1] sentenced the Defendant to a term of life imprisonment on Count One and a term of 120 months' imprisonment on Count Two, to be served consecutively. [Doc. 27]. The Defendant appealed [Doc. 29], and the Fourth Circuit Court of Appeals affirmed [Doc. 47].

In October 2021, the Defendant filed a motion for compassionate release, citing his increased susceptibility to serious illness or death from COVID-19 as a result of a number of chronic health conditions and his efforts at rehabilitation as grounds for release. [Doc. 98]. After directing the Government to respond, the Court denied the Defendant's motion. [Doc. 79]. Specifically, the Court found that because the Defendant is vaccinated and thus generally protected from the most serious harms related to COVID-19, the Defendant's chronic health conditions did not constitute an extraordinary and compelling to justify his early release. [Id. at 6]. Further,

---

[1] The Honorable Lacy H. Thornburg, United States District Judge, presiding. Upon Judge Thornburg's retirement in 2009, this matter was reassigned to the undersigned.

3

while the Court found the Defendant's efforts to improve himself to be commendable, the Defendant's rehabilitation alone did not constitute sufficient grounds to justify a compassionate release. [Id.]. Finally, the Court concluded that, even if the Defendant had demonstrated extraordinary and compelling reasons, analysis of the relevant § 3553(a) factors continued to weigh in favor of his continued incarceration. [Id. at 7].

The Defendant now moves the Court for compassionate release for a second time, citing his serious health conditions, his susceptibility to COVID-19, and his rehabilitation as grounds for relief. [Doc. 80]. He further contends that there is a "significant sentencing disparity between him and other defendant/co-defendants." [Id. at 1].

## II.   DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."   18 U.S.C. §

3582(c)(1)(A). Here, it appears that the Defendant has sufficiently exhausted his administrative remedies with the BOP by requesting compassionate release from the Warden. Accordingly, the Court will proceed to address the merits of the Defendant's compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. This policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the

5

discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020). The Defendant bears the burden of establishing that he is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

Here, the Defendant again argues that compassionate release is warranted because he has a number of serious health conditions that increase his susceptibility to COVID-19 and because he has made efforts at rehabilitation while incarcerated. The Defendant previously raised these arguments in his first motion for compassionate release, and he offers no new arguments or evidence in this regard. For the reasons previously stated, the Court finds that neither the Defendant's serious health conditions nor his rehabilitative efforts, considered singly or in combination, constitute an extraordinary and compelling reason for his release. [See Doc. 79 at 5-6].

6

The Defendant further argues that a "significant sentencing disparity [exists] between him and other defendant/co-defendants" who committed similar offenses.[2] [Doc. 80 at 1, 5]. This argument is simply without merit. The Defendant was subjected to a statutory term of life imprisonment or death (and a guidelines sentence of life) for his murder offense, plus a mandatory consecutive sentence of at least ten years for his firearms offense. As such, the Defendant received the statutory mandatory minimum sentence for his counts of conviction. Any other defendant charged with first degree murder and using a firearm during a crime of violence resulting in death would have faced at least the same sentence. As such, the Defendant has failed to show any significant sentencing disparity that could constitute an extraordinary and compelling reason for a sentence reduction.

For these reasons, the Court concludes that the grounds cited by the Defendant, either singly or in combination, do not constitute extraordinary and compelling reasons for compassionate release.

Even if the Defendant could establish an extraordinary and compelling reason, this Court still must consider the § 3553(a) factors, as "applicable,"

---

[2] The Defendant was the sole defendant named in the Bill of Indictment and thus there are no co-defendants in this case.

as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

As the Court previously noted, evaluation of the § 3553(a) factors weigh in favor of the Defendant's continued incarceration. The Defendant committed the very serious crime of first degree murder by shooting his cousin in the abdomen following a physical altercation earlier in the day. When asked why he shot his cousin, the Defendant replied, "He pissed me off, man." [Doc. 67: PSR at ¶ 10]. The Defendant has only served approximately 16 years of his life sentence. When compared to the seriousness of his crime, the grounds cited by the Defendant fail to justify his early release.

In sum, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant § 3553(a) factors continue to weigh in favor of his continued incarceration.

**IT IS, THEREFORE, ORDERED** that the Defendant's "Motion for Reduced Sentence under 18 U.S.C. § 3582(c)(1)(A)(i)" [Doc. 80] is **DENIED**.

**IT IS SO ORDERED.**

Signed: March 7, 2023

Martin Reidinger
Chief United States District Judge